IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALVARO MANRIQUEZ ALMONTE,

        Petitioner,

   v.

JEAN HILL,

        Respondent.

Civil No. 07-674-ST

FINDINGS AND RECOMMENDATION

C. Renee Manes
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Jonathan W. Diehl
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying state convictions for Aggravated Murder. For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied.

## BACKGROUND

The facts of this case, as determined by the Marion County Circuit Court, are as follow:

> The murders arose out of a family feud originating in Mexico. In November of 1998, Izabel Manriquez (Petitioner's father), killed Felipe Almonte, his brother-in-law in Mexico. In December 1998, Leandro Amante-Vasquez (the brother of Felipe Almonte) traveled from the United States to Mexico and killed Izabel Manriquez and Petitioner's cousin. Mr. Vasquez lived in the Hermiston area. Shortly thereafter, Petitioner who lived in Springfield, Oregon, began plotting to kill Vasquez (who is Petitioner's uncle). Petitioner contacted Sandra Orozco, Vasquez's lover and tried to get her to assist in killing Vasquez. She refused. Petitioner also called Vasquez on the phone and threatened him.
>
> Petitioner and Alejandro Gonzales-Meza drove from the Springfield area to the Hermiston area and rented a motel on January 28, 1999. On January 31, Petitioner and Meza saw Vasquez driving an automobile and followed him to his home in Hermiston. Vasquez went into his home and Petitioner and Meza waited outside for a short period of time. Vasquez was in the home and a co-worker Simon Gonzalez-Villegas was also present. As the occupants were preparing to leave the house to rent a movie, Petitioner and Meza, who were both armed, approached the

2 - FINDINGS AND RECOMMENDATION

> house. As Vasquez appeared in the door way, Petitioner and Meza opened fire. Vasquez shut the door and retreated into the house where he fell mortally wounded. Villegas was also struck by the gunfire and retreated out the back of the house and over a fence in the back yard. Vasquez died at the scene and Villegas died later at the hospital from his wounds. Petitioner maintains that he did not intend to kill Villegas, did not see him at the house, and was unaware of his presence or death until after he was arrested. Petitioner had been to Vasquez's house in the past, however and knew that 4 or 5 people lived there.

Respondent's Exhibit 130, pp. 1-2.

Petitioner was charged with two counts of Murder, as well as two counts of Aggravated Murder under the theory that there was more than one murder victim in the same criminal episode. Seeking to avoid a capital trial, petitioner pled guilty to the two Aggravated Murder Charges in exchange for a life sentence without the possibility of parole. Respondent's Exhibit 103.

Petitioner briefly pursued a direct appeal, which he dismissed on his own motion. Respondent's Exhibit 106.

Petitioner next filed for post-conviction relief ("PCR") in Marion County where the PCR trial court denied relief on all of his claims. Respondent's Exhibit 130. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. *Manriquez-Almonte v. Lampert*, 210 Or.App. 367, 150 P.3d 1114 (2006), *rev. denied*, 342 Or. 503, 155 P.3d 874 (2007).

3 - FINDINGS AND RECOMMENDATION

Petitioner filed his Petition for Writ of Habeas Corpus on May 7, 2007 raising the following claims:

> Ground One: Convictions were obtained by pleas of guilty which were unlawfully induced or not made voluntarily with an understanding of the nature of the charges and the consequences of the plea.
>
> Ground Two: Defendant/Petitioner was denied the effective assistance of counsel . . . [because] counsel's advice was not based on the law of Oregon because defendant had told his attorney that he did not know that [Villegas] was in the house, . . . and that he would never have intended to cause his death.
>
> Ground Three: Defendant/Petitioner was denied effective assistance of counsel . . . [because] counsel refused to consider or research or investigate a defense based on [petitioner's] psychological profile [as well as] his emotional [state].

Petition (docket #1), pp. 6-7.

Respondent asks the court to deny relief on the Petition because: (1) Grounds One and Three are unargued; (2) all claims are procedurally defaulted; and (3) the Oregon state court decisions denying relief on these claims are entitled to deference.

## FINDINGS

### I. Unsupported Claims

Petitioner does not provide any argument to support Grounds One and Three of his Petition, nor does he attempt to refute the State's arguments in its Response that these claims do not entitle him to relief. The court has nevertheless reviewed petitioner's unargued claims and determined that they do not entitle him to

4 - FINDINGS AND RECOMMENDATION

relief. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

## II. Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

5 - FINDINGS AND RECOMMENDATION

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, respondent asserts that petitioner failed to fairly present his Ground Two claim to the Oregon Supreme Court. Specifically, respondent argues that petitioner's Petition for Review did not raise an ineffective assistance of counsel claim, and further failed to raise any federal constitutional claims at all. An examination of the record suggests otherwise.

In his Petition for Review to the Oregon Supreme Court, petitioner argued that the PCR trial court and the Oregon Court of Appeals erred in ruling that the doctrine of transferred intent remained good law in the State of Oregon. Respondent's Exhibit 136, p. 1. He further indicated:

> Application of federal ineffective assistance of counsel jurisprudence also mandates Mr. Manriquez Almonte's convictions be reversed. Mr. Manriquez Almonte's original trial counsel

6 - FINDINGS AND RECOMMENDATION

>           were deficient in failing to understand and
>           advise petitioner on the law, and the PCR
>           trial court's application of an ancient common
>           law theory should not be tolerated by this
>           Court.

*Id* at 6.

This is sufficient to alert the Oregon Supreme Court that petitioner intended to raise a federal ineffective assistance of counsel claim for its consideration. Accordingly, this claim was fairly presented and should be considered on its merits.

### III. The Merits

#### A.   Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

7 - FINDINGS AND RECOMMENDATION

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

**B.   Analysis**

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.  First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."  *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.  The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

8 - FINDINGS AND RECOMMENDATION

result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, petitioner's ineffective assistance of counsel claim is predicated on an interpretation of Oregon law following the enactment of the "new" Criminal Code from 1971. According to petitioner, the doctrine of transferred intent did not survive the enactment of the 1971 Criminal Code and, without it, he cannot be guilty of Aggravated Murder under the theory that he intentionally caused the murders of both Vasquez and Villegas.

The PCR trial court explored this claim thoroughly:

> There are no cases addressing the question of transferred intent in Oregon since the criminal code revisions in 1971. Petitioner argues that the doctrine of transferred intent was eliminated with the change in the homicide statutes in 1971 and later creation of the crime of Manslaughter in the First Degree in 1975, which includes homicides committed recklessly under circumstances manifesting extreme indifference to the value of human life. Petitioner quotes Professor Courtney Arthur of Willamette University in his law review article, *Homicide, Assault, Kidnapping and Related Offenses*, Vol. 51, Oregon Law Review, at 460 (1972), for the proposition that the change was intended to cover situations such as shooting into a crowd or an occupied house or automobile. Professor Arthur notes, however, that the change in statutory language was designed to correspond

9 - FINDINGS AND RECOMMENDATION

> fairly closely in language and policy with the former crime of Murder in the Second Degree which provided that "any person who kills another by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, **although without design to effect the death of any particular individual,** is guilty of murder in the second degree." This would indicate that neither the prior crime of Murder in the Second Degree nor Manslaughter in the First Degree was intended to apply to a factual situation such as the Petitioner's case. There is a significant difference in culpability between recklessly shooting at a passing car or into a crowd or house without the intent to kill any particular person and shooting at a car, house or crowd where there is a specific intent to kill a particular individual and in the process another, perhaps unintended, victim is also killed. Recent cases in other jurisdictions indicate that the doctrine of transferred intent is alive and well in other jurisdictions that have adopted the Model Penal Code. *State v. carter,* 357 NC 345, 584 SE 2nd 792 (2003); *People v. Bland,* 28 Cal. 4th 313, 48 P.3rd 1107 (2002); *Commonwealth v. Castro,* 438 Mass. 160, 778 NE 2nd 900 (2002).

Respondent's Exhibit 130, pp. 7-8 (emphasis in original).

Petitioner subsequently filed a motion seeking a new PCR trial. Respondent's Exhibit 131. His motion was premised on a Sixth Circuit decision involving the application of the transferred intent doctrine in the State of Ohio. In denying the motion, the PCR trial court further explained its interpretation of Oregon law as follows:

> Oregon's murder statute (ORS 163.005/163.115) provides that a murder occurs when the accused "intentionally causes the death of another human being". Unlike the Ohio statute in

10 - FINDINGS AND RECOMMENDATION

>            question in the Richey case, there is nothing
>            in the Oregon statutory language that excludes
>            the application of transferred intent.  In
>            fact the language in the Oregon statute is
>            very similar to the Ohio statutory language
>            which the Sixth Circuit acknowledged would
>            allow for the application of transferred
>            intent.

Respondent's Exhibit 132, p. 2.

Petitioner's ineffective assistance of counsel claim is predicated on his disagreement with the PCR trial court's interpretation of Oregon law regarding the viability of the doctrine of transferred intent.  In habeas cases, federal courts are required to accept state court interpretations of state law, even if disagrees with that interpretation.  *See Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000) ("a federal court is bound by the state court's interpretations of state law.") (*citing Wainwright v. Goode*, 464 U.S. 78, 84 (1983)); *see also Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (state courts are the ultimate expositors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law.") (citing *McSherry v. Block*, 880 F.2d 1049, 1052 (9th Cir. 1989)).  Because the doctrine of transferred intent remains a part of Oregon law, petitioner cannot fault counsel for not advising him to the contrary.

11 - FINDINGS AND RECOMMENDATION

Petitioner also asserts that his counsel was ineffective because he failed to raise the issue in a demurrer. Had he done so, the Oregon Court of Appeals on direct review could have squarely considered the issue of transferred intent. However, petitioner did not fairly present this claim to the state courts for consideration and, therefore, it was not preserved for federal review. *See* Respondent's Exhibits 133 & 136; *see also Carriger v. Stewart*, 971 F.2d 329, 333-34 (9th Cir. 1992), *cert. denied*, 507 U.S. 992 (1993) (ineffective assistance of counsel claims are discrete and must be properly raised in order to avoid procedural default).

Even assuming petitioner had fairly presented such a claim to Oregon's state courts, counsel was under no obligation to file a demurrer given the state of the law on this subject. "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 690).

In addition, petitioner clearly indicated to the Oregon Supreme Court that the Oregon Court of Appeals "applied a legal doctrine abandoned and denounced by the Oregon legislature in its 1971 revision of the Oregon Criminal Code" when it affirmed the PCR trial court's decision. Respondent's Exhibit 136, p. 6. Petitioner therefore concluded, as does this court, that in order

to deny relief on his ineffective assistance of counsel claim, the Oregon Court of Appeals must have determined that the doctrine of transferred intent remains viable in Oregon. In light of this conclusion, it is difficult to see how counsel was constitutionally ineffective for failing to present the same issue to the Oregon Court of Appeals during direct review.

Based on the foregoing, the court concludes that petitioner's ineffective assistance of counsel claim is without merit. Accordingly, the PCR trial court's decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #1) should be DENIED, and a judgment should be entered dismissing this case with prejudice.

///

///

///

///

///

///

///

///

///

13 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

Objections to these Findings and Recommendation, if any, are due February 23, 2009.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this <u>5th</u> day of February, 2009.

                                                              <u>s/   Janice M. Stewart            </u>
                                                              Janice M. Stewart
                                                              United States Magistrate Judge